HUBBARD *vs.* RUSSELL and others.

In an action against the continuator of a private nuisance originally erected by another, to recover damages for the injury sustained thereby, the plaintiff must prove a notice to the defendant, of its existence, and a request to remove it.

Where two letters are written simultaneously, signed by the same individual, containing the same words, and addressed to the same person, one being sent to the person addressed and the other retained by the writer, each is an original, and the one retained may be given in evidence without proving any notice to produce the other.

Where the plaintiff offers evidence, at the trial, which is received without any objection on the part of the defendant that the proper foundation was not laid for it in the allegations of the complaint, the objection cannot be raised afterwards, but will be considered as having been waived.

THE plaintiff brought his action against the defendants for wrongfully overflowing and covering with water a portion of his land, described in the complaint, by means of a dam belonging to them, and averred that they had so damaged his land ever since his ownership of it. The defendants denied this, and then justified their right to overflow the land by the dam at its height, at the time of the commencement of the action. They did not set up want of notice, or any thing on that subject. At the trial the plaintiff established his case, and rested. The defendants called a witness to prove that the dam had not been raised by the defendants, and read in evidence their deeds, and then moved for a nonsuit, on the ground that the nuisance, if any, had not been *created* by the defendants, but merely continued by them as they found it ; and that, therefore, the plaintiff must prove notice to them of the existence of such nuisance, the extent of it, and a request to abate or remove it, before the action could be brought. The court intimating that this was well taken, the plaintiff introduced William W. Scrugham, the plaintiff's attorney, as a witness, who testified : "I wrote to Mr. George Russell, August 4th, 1851 ; I have a copy of the letter now in my hand ; I wrote to him at the request of Mr. Hubbard." The plaintiff then offered to read in evidence the copy of a letter written to Mr. George Russell, of the date of 18th of December, 1852. The defendants objected that no

notice had been given to produce the original. The court sustained the objection, and the plaintiff excepted. The plaintiff's counsel then gave the defendants' counsel parol notice to produce the original; the defendants' counsel objected that the notice was insufficient. The court sustained the objection, and the plaintiff excepted. The witness further testified, "I received the letter which I now have in my hand, dated December 31st, 1852; I think the letter is in Dr. Hibbard's handwriting, but I don't know; after its receipt, Hibbard acknowledged that the letter had been written in answer to one from me, addressed to the firm of Russell, Stiles & Hibbard." The plaintiff's counsel then offered in evidence a copy of the letter to which the letter of the 31st of December, 1852, was an answer; the defendants objected; the court sustained the objection, and the plaintiff excepted. The plaintiff then read in evidence the letter of the 31st of December, 1852, as follows, viz:

"No. 145 Water st. New York, Dec. 31st, 1852.
WM. W. SCRUGHAM, Esq.

SIR : Your note of the 18th inst., stating that Mr. R. Hubbard complains that we overflow a portion of his farm, without legal right, is received. We beg to apologize for the delay in answering it. We are not aware of any cause for the complaint, and would be pleased to see Mr. Hubbard, for the purpose of learning definitely of the facts of which he has complained. We desire, if possible, to live on good terms with our neighbors.         Very respectfully,

RUSSELL, STILES & HIBBARD."

The witness also testified: "I had an interview with Hibbard about the correspondence; I spoke also of the subject matter of the correspondence; I was acting for Hubbard, the plaintiff; I can't tell what was said, with any precision; the conversation was about this nuisance of overflowing the land of Hubbard; I told them of Hubbard's claim; I told Hibbard they should settle it, or make some amicable disposition of it, and thus avoid a law suit; Hibbard denied that he, the plaintiff, had any rights there, or that they trespassed upon him, in the least;

the conclusion to which we came was, that there had better be a law suit to try the right; I don't remember any thing more; the defendants are all in business together." Here the defendants rested, and renewed the motion for a nonsuit, on the grounds above stated; and further insisted that the evidence given by the last witness did not obviate either of these objections. The court then, upon the ground mentioned as the first taken by the defendants, granted the motion for a nonsuit, and the plaintiff's counsel excepted. He now, upon a bill of exceptions, moved for a new trial.

*W. W. Scrugham*, for the plaintiff.

*J. W. Tompkins*, for the defendants.

S. B. STRONG, P. J. The alleged nuisance in this case consisted in continuing to overflow the plaintiff's land by the defendants' millpond. The nuisance had not been originated by the defendants, or either of them, but was created by those from whom they derived their title. The margin of the pond was the same when they took their deed as it was when this action was instituted. The conveyance to the defendant Russell, under whom the other defendants claim title, is dated on the 30th of September, 1848, since which time the defendants, some or one of them, have been in the possession (claiming title) of this land which is covered by such conveyance. The plaintiff acquired his title by a deed dated on the 9th day of June, 1851. If it had appeared clearly that the defendants' deed had included in its boundaries all the land overflowed by their pond, as it purported to convey the absolute fee of what it described, then it would have followed that the defendants held the land adversely when the plaintiff took his conveyance, and that would have been imperative so far as it related to the title to the land which was overflowed. However, that does not distinctly appear, and as the nonsuit was not granted upon that, but exclusively upon another ground, the

question of adverse possession does not legitimately arise on the motion for a new trial.

The nonsuit was granted on the objection that it did not distinctly and satisfactorily appear that the defendants had been requested to abate the nuisance, and had subsequently neglected to do so. It does not seem to have been clearly settled that such a request is necessary. Starkie says in his work on evidence, (*vol. 3, p.* 992,) that it should seem that giving of such notice is unnecessary in order to enable the alienee to maintain an action against a wrongdoer who is guilty of a continuing nuisance, by neglecting to remove it. But the editor of my edition of that work subjoins a *quære* to this position of the learned author, and I think with good reason. It had been decided in *Penruddock's case*, (5 *Coke*, 101 *a*,) that the request was necessary. The case was quoted with approbation by Lord Chief Justice Willes, (*Willes' Rep.* 583,) who remarks, that "as to the distinction between the beginning and continuance of a nuisance by building a house that hangs over or damages the house of his neighbor, that against the beginner an action may be brought without laying a request to remove the nuisance, but that against a continuer a request is necessary; for which *Penruddock's case* (5 *Coke*, 100, 101,) was cited, *and many others might have been quoted; the law is certainly so, and the reason of it is obvious. Chitty*, in a note to his work on *Pleading*, (*vol.* 2, *p.* 333, *n. c*,) applies the rule to nuisances generally. He says, "if the action is not brought against the original creator of the nuisance, but against his feoffee, lessee, &c. it is necessary to allege a special request to the defendant to remove the nuisance." The cases of *Crippen* v. *Bowles*, (1 *Roll. R.* 222,) and *Lambert* v. *Berry*, (*Raym. R.* 424,) would seem to indicate a different rule in reference to obstructions to ancient lights and private ways, but there may be something peculiar to each of those injuries, calling for an exception to the general rule. If not, I should consider the rule requiring a notice to the continuator of a private nuisance and a request to remove it as a reasonable one, and established by the latter authority, and am inclined to continue it. If

the action is a substitute for the ancient remedy under the head of *quod permittat*, it would seem to follow that a knowledge of the wrong should in some way be brought home to the person charged. A permission implies something more than mere involuntary acquiescence.

But it seems to me that the plaintiff proved, or offered to prove, sufficient to infer a request to discontinue the nuisance. He offered in evidence a letter to that effect, written by his attorney. The letter was rejected, on the ground that it was a copy, and no notice had been given to the defendants to whom it was addressed, to produce the original. The objection was, under the circumstances, entirely technical, and was not, I think, valid, even under the strictest technical rule. The letter retained by the plaintiff's attorney, and that sent by him to the defendants, were duplicates. They were written simultaneously, signed by the same individual, contained the same words, and were addressed to the same person. Each was an original—the one retained as much as the one sent. In the case of *Ivry* v. *Orchard,* (2 *Bos. & Pul.* 39,) the plaintiff's attorney made out two papers (notices) precisely to the same effect, and signed them both for his client, one of which he delivered to the defendant, and the other, which was produced on the trial, he retained, and it was held that the one retained might be given in evidence, without proving any notice to produce the other. Lord Eldon said that the strong inclination of his opinion was, that the paper retained was a duplicate original. That the practice of allowing duplicates of this kind to be given in evidence seems to be sanctioned by this principle, that the original delivered being in the hands of the defendant, it is in his power to contradict the duplicate original by producing the other, if they vary. Buller, J., said, " the attorney in this case made the copies of the paper, one of which he meant to deliver; he signed both, and it was indifferent which of them he delivered, for they were both originals." Heath, J., concurred, and it was decided (one judge dissenting) that the paper offered should have been received in evidence. Starkie (*vol.* 2, 275,) quotes this decision with approbation, and says, " it seems to be suffi-

cient in all cases to prove the service of a duplicate notice. It seems to me that the letter offered in evidence in the case under consideration should have been received. But if not, the letter addressed by the defendant to the plaintiff's attorney was properly given in evidence, and that expressly acknowledged the receipt of a note stating that the plaintiff complained that the defendants overflowed a portion of his farm, without legal right. I cannot see why that letter, if it stood alone, would not have been sufficient to prove notice of the continuance of the nuisance, and a consequent request that it should be removed.

The nonsuit should be set aside, and a new trial granted, costs to abide the event of the suit.

BIRDSEYE, J. The plaintiff gave evidence on the subject of the notice to the defendants before suit brought; and this evidence was received without objection on the part of the defendants, that the proper foundation was not laid for it in the allegations of the complaint. Had this objection then been taken, the court might, and probably would, under the 173d section of the code, have permitted an amendment, by inserting the necessary allegations in the complaint. But the defendants having been silent when that objection might have been got rid of, if it had been raised, ought not now to be permitted to speak. So far as the submission of that question to the jury is concerned, they should be held by their conduct at the trial, to have waived the objection that the proper foundation for this proof was not laid in the pleadings. If this view is correct, this proof should have been submitted to the jury. When it is considered that in the conversation with the attorney for the plaintiff, one of the defendants denied that the plaintiff had any rights in the premises in dispute, or that they trespassed upon him in the least, it would seem that the jury should have been instructed to inquire whether that did not supersede the necessity of giving any notice, or making any request to abate the nuisance. It is difficult to see of what use this notice and demand could be, when the defendants in-

sisted that the plaintiff had no rights whatever in the premises, and that they were not trespassing upon him at all.

I am of opinion that the present action, which is substituted for the writ of nuisance by §§ 453, 4, of the code, is governed by all the rules of the code in regard to amendments, the principles of pleading, the rules in regard to parties, &c. In this respect this action resembles the action which, by § 449, is substituted for the proceedings to compel the determination of claims to real estate. In *Mann* v. *Provost*, (3 *Abbott*, 446,) it was held that the court had the power to relieve against defaults, as in an ordinary action. It is true there is a difference in the language between § 449 and § 454; but still I think the latter section gives to the court all the power over the action substituted for the writ of nuisance, and applies to it the rules as to parties, &c. which apply to common actions. This being so, any defect of parties, in not joining the erector of the nuisance with the defendants, as continuators of it, was waived by failing to set it up, either by demurrer or answer. (*Code*, §§ 144, 147, 148.) And the power to amend the complaint to conform it to the facts proved, was given by § 173. The nonsuit should be set aside and a new trial granted, costs to abide the event.

EMOTT, J., concurred.

Judgment accordingly.

[KINGS GENERAL TERM, January 13, 1857. *S. B. Strong, Birdseye* and *Emott*, Justices.]