THE CONHOCTON STONE ROAD, Respondent, *v.* THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, Appellant.

In order to maintain an action for damages resulting from a nuisance upon defendant's land,-where such nuisance was erected by a previous owner before conveyance to defendant, it is necessary to show that before the commencement of the action he had notice or knowledge of the existence of the nuisance, but it is not necessary to prove a request to abate it.

The decisions in actions for damages resulting from nuisances collated.

(Argued January 14, 1873; decided March term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the eighth judicial district, entered upon an order denying a motion for a new trial, and directing judgment in favor of plaintiff upon a verdict. (Reported below, 52 Barb., 390.)

This action was brought to recover damages for injuries to the plaintiff's road bed, caused by the same being washed and flooded in the years 1864 and 1865. The complaint alleges that an embankment and bridge, built and constructed for the defendant's railroad, at and over Mead's creek, in the town of Irwin, Steuben county, dammed the stream so as to produce the flood and injury.

It appeared from the evidence that the embankment and bridge were constructed by the Buffalo and Conhocton Valley Railroad Company in 1851 or 1852; that the name of this company was, in 1852, by an act of the legislature, changed to the Buffalo, Corning and New York Railroad Company; that the defendant was created a corporation in 1857, and in that year, on a foreclosure sale, bought the railroad and franchises of the said last named company, and have owned the same ever since. In February, 1863, the defendant leased its road to the Erie Railway Company for the term of 490 years, including all its equipments and rolling stock, and that company took possession thereof under the lease on the first day of May, in the same year, and have continued in possession since that

time. The lease provides for the payment of an annual rent by the lessees, in equal monthly payments. The right of re-entry is reserved to the defendant, and the lease has stipulations in regard to repairs to be made on the road. The road has been constantly used and operated since its completion.

The defendant, after the introduction of that evidence, moved for a nonsuit on the following grounds:

"1st. That, by the evidence already adduced, the plaintiff has failed to prove that the defendant erected the embankment and bridge, or either of them, as alleged in the complaint.

"2d. That the nuisance, if any, had not been erected by the defendant, but merely continued by them, as they found it, and that, therefore, the plaintiff must allege and prove notice to the defendant of the existence of such nuisance, the extent of it, and request to abate or remove it before the action could be brought.

"3d. That the defendant did not continue the nuisance after May 1, 1863, it having leased its road and surrendered possession thereof to the Erie Railway Company on that day, and has had no control of the road, or any part thereof, since that time, and, therefore, no power to abate or remove this nuisance."

The court denied the motion for a nonsuit, and the defendant duly excepted.

A verdict was rendered for the plaintiff, and the said exception was ordered to be heard in the first instance at General Term, and judgment was in the mean time suspended.

*John Ganson* for the appellant. The railroad and bridge were built in pursuance of legislative authority, and hence they cannot be treated *per se* as nuisances. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 42.) The builder in cases like this is liable only for such damages as are occasioned by a want of care and skill in exercising the power conferred upon it by law. (*Radcliff* v. *Mayor, etc., of Brooklyn*, 4 Comst.,

195, 200; *Attorney-General* v. *H. R. R. R. Co.*, 1 Stockton [N. J.], 526; *Newark Plank-road Co.* v. *Elmer*, id., 754; *Selden* v. *Del. & Hud. Canal Co.*, 29 N. Y., 634, 642.) Plaintiff should have proved that a distinct and unequivocal notice to remove the nuisance had been given to defendant before the commencement of this action. (*McDonough* v. *Gilman*, 3 Allen, 264; *Penruddock's Case*, Coke, 100, *b*, part 5; *Roswell* v. *Prior*, 2 Salk., 460; *Johnson* v. *Lewis*, 13 Conn., 303; *Dodge* v. *Stacy*, 39 Vt., 560; *Pillsbury* v. *Morse*, 44 Maine, 154; *Pierson* v. *Glean*, 2 Green [N. J.], 36; *Woodman* v. *Tuffts*, 9 N. H., 88, 91; *Beavers* v. *Trimmer*, 1 Dutcher [N. J.], 96, 101; *Plumer* v. *Harper*, 3 N. H., 88; Angel on Water-courses, § 403; *Hubbard* v. *Russell*, 24 Barb., 404.)

*George B. Bradley* for the respondent. Defendant owned the bridge and embankment which caused the injury, and is liable for plaintiff's damages. (*Waggoner* v. *Jermain*, 3 Den., 306; 34 How. Pr. R., 288; *Brady* v. *Weeks*, 30 Barb., 161; *Blunt* v. *Aiken*, 15 Wend., 522.) Defendant is liable for continuing the nuisance. (*Brown et al.* v. *C. and S. R. R. Co.*, 12 N. Y., 486, 492; 34 How. Pr. R., 288; *Vedder* v. *Vedder*, 1 Den., 257; 3 Blackstone Com., 220; *Brady* v. *Weeks*, 3 Barb., 157; *Fish* v. *Dodge*, 4 Den., 317; *Beckwith* v. *Griswold*, 29 Barb., 291, 294.) One who continues a nuisance is liable for injuries received thereby without notice. (*Brown et al.* v. *C. and S. R. R. Co.*, 12 N. Y., 486, 492.) Defendant's lease to the Erie Railway Company does not absolve it from liability for injuries by a nuisance existing thereon at the date of such lease. (*Waggoner* v. *Jermain*, 3 Den., 306, 310; *Blunt* v. *Aiken*, 15 Wend., 522, 524; *Picard* v. *Collins*, 23 Barb., 444; *Fish* v. *Dodge*, 4 Den., 311.)

Lott, Ch. C. The exception taken to the denial of the motion for a nonsuit presents the question whether a grantee of real estate, on which a nuisance had been erected, before its conveyance to him, by a previous owner, and which was

merely continued as it was at the time he acquired title, can, without any previous notice of its existence, and a request to abate it, be held liable for damages subsequently resulting therefrom, during the continuance of his ownership.

The subject has been fully considered by courts in England and in several of our sister States ; and the rule deducible from their decisions is laid down in Angell on Watercourses (6th, or Perkins' edition) to be, that an action on the case for a nuisance lies both against the person who originally committed it, and against the person in the occupation or possession of the premises who *suffers* it to continue, for the reason that the continuance of that which was originally a nuisance is a *new* nuisance (§ 402) ; but as the purchaser of land might be subject to great injustice, if made responsible for consequences of a nuisance of which he was ignorant, and for damages which he never intended to occasion or continue, it has been held ever since *Penruddock's Case* (5 Rep., 101) that where a party was not the original creator of the nuisance he must have notice of it, and a request must be made to remove it before any action can be brought. No particular form of notice or request is required. It may be either written or oral (or it may be by acts done), clearly informing the party to be affected by it of the existence of the nuisance, and of the desire of the party injured to have it removed, so that the person to whom it is addressed shall fully understand the ground of complaint, and that the party giving it is unwilling to have it continue. (§§ 403 and 403 *a.*)

In *Penruddock's Case*, above referred to, it was resolved by all the judges that, although the continuance by a feoffee of a nuisance erected by his feoffor was a *new* wrong, yet a *quod permittat* would not lie against him without a request made to reform it. This principle has been sustained and recognized by the decisions in the following among other cases : *Brent* v. *Haddon* (Cro. Jac., 555) ; *Winsmore* v. *Greenbank* (Willes, 583) ; *McDonough* v. *Gilman* (3 Allen [85 Mass.], 264) ; *Johnson* v. *Lewis* (13 Conn., 303) ; *Dodge* v. *Stacy* (39 Vermont, 560) ; *Pillsbury* v. *Morse* (44 Maine,

154); *Plumer* v. *Harper* (3 N. H., 88); *Woodman* v. *Tufts* (9 id., 88–91); *Carleton* v. *Redington* (2 id., 291; id., 311); *Eastman* v. *Amoskeag Manufacturing Co.* (44 id., 143); *Pierson* v. *Glean* (2 Green [N. J.], 36); *Beavers* v. *Winner* (1 Dutcher [N. J.], 96, 101); see, also, 1 Chitty's Pleadings, 71 and 77, 2d ed. ; 2 id., 381, note *p*.

In *Winsmore* v. *Greenbank* (*supra*), decided in 1745, WILLES, Lord Chief Justice, in speaking of the distinction between the beginning and continuance of a nuisance by building a house that hangs over or damages the house of his neighbor, says: "That against the beginner an action may be brought without laying a request to remove the nuisance·; but that against the continuer a request is necessary, for which *Penruddock's Case* (5 Cro. Jac., 100, 101) was cited, and many others might have been quoted. The law is certainly so, and the reason of it is obvious."

It was said by the court in *Dodge* v. *Stacy* (*supra*), decided in 1867: "We regard it settled by the authority of well adjudged cases that when the action is brought against the grantee of one who has erected obstructions, it cannot be maintained without previous notice to the defendant to remove them ;" and added, that the point was clear on principle and on authority.

Chief Justice HORNBLOWER, in *Pierson* v. *Glean* (*supra*), after citing *Penruddock's Case* said that the law, as settled by it, had not, as he believed, been seriously questioned since; and then after referring to the remark of Lord Chief Justice WILLES, in *Winsmore* v. *Greenback*, above quoted and other authorities, concluded his opinion, on deciding a demurrer to an answer by a defendant, setting up as a defence to an action for damages resulting from a nuisance that it had been erected before he had acquired title, and that he had never been requested to reform or remove it, by saying, "As well, then, upon the good sense and common justice of the case, as upon the ground of venerable and unquestioned authority, I am of opinion that the demurrer should be overruled."

I do not find, nor have I been referred to any decision in this State, on the distinct question now under review.

There are several cases reported, in which the general doctrine stated in Blackstone's Commentaries (vol. 3, p. 220) is asserted, that "every continuance of a nuisance is held to be a fresh one," but the statement, construed in connection with the context, evidently has reference to its continuance by the same party; and where persons succeeding to the ownership of land on which a nuisance had previously been erected, have been held liable for damages resulting from its subsequent continuance, it appears either that it was after notice of its existence, or that the question of such notice had not been raised at the trial. The case of *Brown* v. *The Cayuga and Susquehanna Railroad Company* (2 Kern., 486) was one of the latter class, and in that of *Irvine* v. *Wood*, decided by this commission in September, 1872 * (which was for special damages resulting from a public nuisance), the fact was shown that the defendant Wood had knowledge of its existence and had availed himself of it, so that he was fully cognizant of it and of the consequences that might result therefrom.

There are, however, two cases reported, in which the question was discussed by able and eminent jurists, Judges Denio and S. B. Strong, entertaining different opinions, and the high estimation and respect to which that of the former is always entitled, adverse to the rule in England and in sister States, to which I have referred, has caused a hesitation and doubt in adopting it, and has led me to examine the ground on which he reached his conclusion.

The case in which Judge Strong's views are expressed is that of *Hubbard* v. *Russell* (24 Barb., 404), decided in 1857. It involved the question, but it did not become necessary to decide it, because it was held that the plaintiff had proved or offered to prove sufficient to infer a request to discontinue the nuisance.

The opinion of Judge Denio was given, in *Brown* v. *The Cayuga and Susquehanna Railroad Company* (*supra*), before

*Ante*, p. 224.

that of Judge Strong, but was not referred to by him, and probably had not been brought to his attention; and it is important, in considering what effect or weight should be given to that of Judge Denio, to notice the fact that the question was confessedly not presented in the case in which it was delivered; and Judge A. S. Johnson, who gave the prevailing opinion in it, said that it was to be considered as if the requisite proof of a request to remove the nuisance had been given; it is also stated by the reporter that the court did not pass upon the question whether the defendant was liable, without notice, to remove the obstruction complained of.

The learned judge, in speaking of and commenting upon *Penruddock's case,* as that in which " the doctrine seems to have originated," said, and correctly, that it "was a *quod permittat,* a form of action in which the successful plaintiff obtains a judgment not only for the damages, but for the abatement or destruction of the thing which is claimed to be a nuisance; and it was held that such an action might be brought against him who did the wrong, without any request made, but that it could not be brought against his feoffee without a previous request to remove the nuisance." He appears to concede the propriety and justice of the rule as applicable to that particular form of proceeding but claims that the reason for it does not apply to an action on the case. He says: " The remedy sought by a *quod permittat* involves an interference with the defendant's real estate, which it is reasonable he should have an opportunity to do himself before an authority is given to another to do it." It is true that such an interference might follow: Blackstone, in his Commentaries (vol. 3, p. 221), says it was " a writ commanding the defendant to permit the plaintiff to abate, *quod permittat prosterndre,* the nuisance complained of, and unless he so permits, to summon him to appear in court and show cause why he will not; and this lies as well *for* the alienee of the party first injured as *against* the alienee of the party first injuring, as has been determined by all the judges; and the plaintiff shall have judgment herein to abate

the nuisance and to recover damages against the defendant;" but it is apparent from the object of the writ, as thus stated, that there was much more reason for requiring a notice of the existence of a nuisance to be given to a party who might not have any knowledge of it and ask him to remove or abate it before he should be mulcted in damages, to which he would be liable for injuries resulting therefrom, and which he had no reason to anticipate, than to be called on by the requirement of the other relief sought to be obtained, being a permission to the plaintiff to abate the nuisance. The service of the writ on the defendant would give him an immediate opportunity to abate it himself; and it would doubtless have been a sufficient answer, on his appearance in court in obedience to the summons to show cause why he would not permit the plaintiff to do it, to return and state the fact that he had himself since its service abated or removed the cause of complaint, and that he previous thereto was wholly ignorant and uninformed of its existence. He would, nevertheless, if the views of the learned judge are correct, be held liable for damages which had resulted without any actual fault on his part.

Three other authorities, and only three, appear to have been cited as sustaining the requirement of a notice; at least no more are referred to by the judge. One was the case of *Tomlin* v. *Fuller* (1 Modern, 27), which he properly said turned upon the particular nature of the right which the plaintiff had to the use of a passage which the defendant had obstructed, in which Twisden, J., in speaking of it, said, "wherefore, it seems, he ought to have laid a request," and that the defendant might have demurred, but he held that it was cured by the verdict. That was, moreover, an action against the party who closed or shut the passage, and did not sustain the principle for which it was cited. Another case was that of *Salmon* v. *Bensley* (Ryan & Moody, 189; 21 Eng. Com. Law R., 414). It was a *nisi prius* case, involving a question of *evidence* in an action against an *occupier* merely of the property, and in truth clearly not any authority in sup-

port of the doctrine involved in this action, and I doubt whether the decision on the question actually presented was correct.

The other case was *Johnson* v. *Lewis* (13 Conn., 303, *supra*), which was disposed of by the remark of the learned judge that, " on the authority of *Penruddock's Case* and of *Tomlin* v. *Fuller*, the Supreme Court of Connecticut held that, in a case like the present, the plaintiff could not recover *in case* against one who continued a nuisance without proof of notice to the defendant to remove it." He then said, in conclusion : "Being of the opinion that the principle is not established by any authority binding on us, and seeing nothing in the nature of the case which requires a notice to be given to the upholder of a nuisance, as a condition to his being made responsible for its consequences, I think such notice is not required to be given. Every one is bound so to use his own property that it shall not be the means of injury to his neighbors; and I think the proprietor should himself look to it, and that he cannot safely wait to be admonished before reforming what may be dangerous to others." This reason is unsatisfactory. A party, having no knowledge or notice of the existence of an evil, cannot reform it; and he, consequently, cannot be chargeable with a fault or a wrong for not doing it; nor can he, under such circumstances, be said to *uphold* a nuisance, or be *waiting* to be admonished to reform it. Such conduct implies a willing, and not merely an involuntary, acquiescence in the continuance of the wrongful act. I am, therefore, constrained to hold that the rule requiring notice is proper and should be adopted.

It is proper, before dismissing the question, to notice that the opinion of the General Term assumes that, in such case, all damages resulting between the conveyance by the wrong-doer and a demand of the alienee to abate the nuisance will be lost; and it is argued that a party cannot be deprived of his right of action therefor, by the act of the person doing the wrong in alienating the premises to a party of his own

selection. This is answered by the decision in *Waggoner* v. *Jermain* (3 Denio, 306), which had previously been cited, and decides expressly that such *original* wrong-doer, notwith-standing such alienation, remains liable for the damages occasioned by the continuance of the nuisance subsequent to the conveyance; and such is a part of the rule in *Penruddock's Case.*

It is also stated in that opinion that the evidence in the case showed that the superintendent of the defendant's road had notice, prior to the years 1864 and 1865 (when the damages in question were sustained), from Charles Cooper, an owner of property adjacent to the plaintiff's, and exposed to like damages in case of floods, but who was not an agent of the plaintiff nor interested in the company, of the nature of the nuisance and its effect, and was asked to open the channel, and that he replied that he would not do it; and the judge, giving the opinion, closes it by saying that he was inclined to think that sufficient notice, if any was required. This is clearly untenable. A notice affecting the land of one party cannot be extended to a different piece of ground owned by another.

It follows from what has been said, without the expression of an opinion as to the third ground of the motion for a non-suit, that proof of the mere continuance of the nuisance on the land of the defendant, without such knowledge or notice of its existence as to charge it with fault for such continuance, was not sufficient to maintain the action.

The judgment must, therefore, be reversed and a new trial granted, costs to abide the event.

All concur, on ground that proof must show notice or knowledge on the part of defendant of the existence of the nuisance, but that no request to abate it was necessary.

Judgment reversed.