9    98
38ap307
9h   98
167a 288

BLANDINA MERRITT, RESPONDENT, *v.* WILLIAM P. COLE, JR., ADMINISTRATOR, ETC., OF JOHN R. COLE, DECEASED, APPELLANT.

*Promissory note under seal — negotiability of — payments upon — distinction between negotiable and non-negotiable paper.*

A promissory note under seal is not negotiable.

Where a promissory note under seal, payable to the order of the plaintiff, was taken by her father, upon a consideration moving from him, and after being delivered to the plaintiff, then a minor, was immediately returned to the father, in whose possession it remained until his death, a period of nearly thirty years, during a large portion of which time the plaintiff resided with and was supported by her father, *held,* that payments made by the maker to the father while the latter was in possession of the note, and before the maturity thereof, were valid, even though no direct authority for the plaintiff to receive the same was shown.

In such a case it is error to charge that the defendant must show knowledge and consent by the plaintiff to these payments, and that the possession of the note by Charles Dewitt under the conceded facts was not *prima facie* evidence of his authority to receive them.

*Semble*, that the principle that payments made by the maker of a promissory note before the maturity thereof are at his peril, applies only to negotiable paper.

APPEAL from a judgment in favor of plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the court.

Upon the trial plaintiff produced a sealed note, of which the following is a copy:

"For value received I promise to pay unto Blandina Dewitt, daughter of Charles Dewitt, Junior, of Marbletown, or bearer, the sum of six hundred dollars immediately after the decease of the said Charles Dewitt, Jr.

"In witness whereof I have hereunto set my hand and seal the twentieth of May, one thousand eight hundred and twenty-eight.

[L. S.]         "JOHN R. COLE.

"Witness: JNO. A. DEWITT."

On the back of which were three receipts in the following form:

"John R. Cole Cr. on the within note two hundred and fifty dollars.

         "CHARLES D'WITT.

"Dated 1845, March 5th."

"$74. 1850, Sept. 10. Received on the within note 74 dollars.

         "CHARLES D'WITT."

"July 26, 1853. Received from John R. Cole 200 dollars on the within note.

         "CHARLES D'WITT."

The plaintiff, who is the payee of the note — married to Daniel Merritt at the age of nineteen — testified that on the day of the date of the note (she then being seventeen years old) her father handed it to her; she immediately returned it to him, and told him to keep it for her; and that she did not see the note again until after her father's death in 1857, thirty years, when it was found among his papers and handed to her by her brother.

The consideration of the note was the transfer of certain real estate from Charles Dewitt and wife to Catharine Cole, the wife of the maker of the note, and the other daughter of Charles Dewitt.

During the thirty years which elapsed from the date of the note to the death of Charles Dewitt the plaintiff lived most of the time with him,

The maker of the note died after the suit was brought, and the action was revived in the name of the defendant, his executor.

At the close of the evidence the defendant asked the court to direct a verdict for the plaintiff for the balance due on the note at the death of Dewitt after deducting the payments, viz., seventy-six dollars, with interest from the date of death. The court declined, and defendant excepted.

The court charged the jury that it was for them to determine whether Dewitt had authority to receive the payments, and that the burden of proof was upon the defendant, not only to show the receipt of the money, but that Dewitt had authority to receive the payments.

*D. M. Dewitt*, for the appellants.

*Bernard & Fiero*, for the respondent.

BOARDMAN, J.:

The note in suit was under seal, and was not, therefore, negotiable. (*Clark* v. *Farmers' Woolen Man. Co.*, 15 Wend., 256; 1 Pars. on Notes, 26; 2 id., 35; *Dinsmore* v. *Duncan*, 57 N. Y., 577.) It was not, therefore, commercial paper to which *bona fide* purchasers could acquire title as against the rights of the original parties to the contract. Plaintiff's father conveyed the property to defendant's testator, in consideration of which this note was given. The father was therefore owner of the note when given. This would be true, even though the title to the real estate sold was in his wife, of which I think there is no proof. For the conversion of the real estate of the wife into money, at that time — 1828 — would vest the money or personal property taken therefor in the husband, he having taken possession of it at that time. Until Charles Dewitt, Jr., plaintiff's father, made a valid gift of the note to plaintiff, the title to the same would remain in him. I find no evidence that defendant's testator had any knowledge of plaintiff's claim or ownership of the note before 1853, when the last payment of $200 was paid. Prior to that two payments had been made by defendant's testator to Charles Dewitt, Jr., and indorsed upon the note then in his possession, viz., $250 March 5,

1845, and seventy-four dollars September 10, 1850. If it be true that John R. Cole had no knowledge of any transfer or gift of the note to the plaintiff when those payments were made, they should be allowed to the defendant because the secret equities of the plaintiff ought not to prevail over the legal presumption which Cole was entitled to entertain — that the note still belonged to Charles Dewitt, to whom it was given and who still held possession of it.

I will not, however, rest on that conclusion, but consider the case upon the question arising upon the trial — were the payments made by John R. Cole to Charles Dewitt on this note good and binding upon the plaintiff, even if she was its owner?

It must be remembered that Dewitt was plaintiff's father, and had possession of the note which was payable to plaintiff or bearer; that the consideration for the note moved from him and the contract, was made with him; that the note was given to plaintiff when she was a minor and immediately returned to her father, who, for nearly thirty years, and until his death, had retained its custody; that during a large part of that time plaintiff had lived with her father, and, to a greater or less extent, had been supported and maintained by him. Under such circumstances was a payment to Charles Dewitt good?

If this note had been overdue when the payments were made, no doubt can exist such payments would be valid under the facts proved. The fact that the payments were made before maturity is not, in my judgment, important. The doctrine contained in the text books, that a payment made before the note is due is at the peril of the maker, has no application to this case. That principle relates only to commercial paper. The peril is that such paper may, after such payment, get into the hands of a *bona fide* holder, who can enforce it notwithstanding such payment. In this case the status of the note is not changed after payments made. If they were good when made, they are still so; no new purchaser or party has intervened.

The validity of the payments will depend upon circumstances surrounding the case. The possession of the note by Charles Dewitt, Jr., if not evidence of title, is still presumptive evidence of authority to receive payment thereof. Certainly he could have sold the note to a *bona fide* purchaser and given a good title.

Some of the earlier English cases are collected in 1 Equity Cases Abridged, 145. It is there held that where a scrivener is intrusted with a bond he may receive both principal and interest. The same principle is applied to the case of an agent or attorney who loans money for and in the name of his principal, and retains possession of the bond and mortgage. Payments made to the attorney will bind the principal though never received by the latter. (*Hatfield* v. *Reynolds*, 34 Barb., 612.) Mr. Justice EMOTT says: "If such agent is intrusted with the continued possession of the bond or evidence of debt, authority for him to receive payment may be implied," citing Paley on Agency, 274; Story on Agency, sections 98, 104. To the same effect is *Williams* v. *Walker* (2 Sandf. Ch. [m. p.], 325), where many of the English cases are reviewed. It is there said: "While Bancker had the possession of the bond, although he had neither the mortgage nor the assignment, Mr. Walker, the defendant, was, in my judgment, entitled to presume that he was authorized to receive the principal as well as the interest on the bond and mortgage." I see no essential distinction between the case of a bond and a sealed note.

But the same principle, by implication, has been decided by the Court of Appeals in *Doubleday* v. *Kress* (50 N. Y., 410), as to an ordinary negotiable promissory note. The learned judge says: "That the agent took the security or negotiated and made the loan for which the security was taken, and was thereafter intrusted by the owner with its possession, is sufficient to render the payment valid." Again: "The reason of the rule, that one who has made the loan as agent and taken the security is authorized to receive payment when he retains possession of the security, is founded upon human experience, that the payer knows that the agent has been trusted by the payee about the same business, and he is thus given a credit with the payer." So, also, it is held that "one who has the possession of a negotiable promissory note with all the evidence of ownership by the act and consent of the owner, may deal with the maker in respect to it, and the owner will be bound by the acts and agreements of the possessor and apparent owner." (*Scoville* v. *Landon*, 50 N. Y., 686.)

These authorities, I think, are sufficient to justify the conclusion that Charles Dewitt, Jr., was, upon the facts proved, authorized to

receive the payments made by Cole upon the note in suit, and they should have been allowed thereon.

If this conclusion be correct, the learned judge erred in holding that the defendant was bound to show these payments were made with the consent of the plaintiff. The burden of the charge was that the defendant must show knowledge and consent by the plaintiff to these payments, or authority in Charles Dewitt, from plaintiff, to receive them, and that the possession of the note by Charles Dewitt, under the conceded facts proved, was not *prima facie* evidence of his authority.

I do not see that the marriage of the plaintiff about 1830 can influence the result of this action. The husband never had possession or control of this note.

It is not apparent how the defendant can urge any real or imaginary indebtedness of the plaintiff to her father's estate in bar of this action. The defendant is bound to pay the amount due to this estate. Any claim in favor of Charles Dewitt's estate is to be enforced in a far different mode.

The amount due and unpaid upon the note at the time of the trial, after deducting the three indorsements, was $170.62.

The judgment and order must, therefore, be reversed and a new trial granted, costs to abide the event, unless the plaintiff, within twenty days after notice of this decision, shall stipulate to reduce the damages included in the judgment to $170.62, in which case the judgment, as so modified, is affirmed, with costs of this appeal to the defendant.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed and new trial granted, costs to abide event, unless plaintiff, within twenty days after notice of this decision, shall stipulate to reduce the damages in the judgment to $170.62, in which case the judgment, as so modified, is affirmed. Costs of this appeal to the defendant.