SARAH McGRATH, RESPONDENT, *v.* SARAH F. WALKER, APPELLANT.

*Negligence — construction of a run-way in a sidewalk — a nuisance existing when premises are let — liability of the owner — visit of the jury to the* locus in quo.

Prior to the time when Sarah F. Walker purchased certain premises they had been used as a livery stable, for the purposes of which a run-way had been excavated in the sidewalk of a city street, by which the basement was reached. The run-way began at about the outer line of the stoop of the house, and descended at an angle of fifteen degrees towards the house, at which point it reached the depth of four feet. Sarah F. Walker leased the premises to a tenant, not changing this construction.

In 1889 Sarah McGrath, walking along the sidewalk at night, fell into the run-way and brought an action against Sarah F. Walker for the recovery of the damages resulting from the injury. There was neither allegation nor proof that the city had originally authorized the construction of this run-way, although it had existed from a date prior to 1860.

*Held,* that the action could be maintained.

That the run-way was a nuisance, and that it was the duty of the owner to have abolished it; and that, having leased the premises with the nuisance in existence, she was liable to one who, free from negligence on her part, was injured while lawfully using the sidewalk.

That the maintenance of a nuisance is a wrong equal to that involved in its creation.

*Semble,* that it was error for the court to allow the jury to visit the *locus in quo.*

APPEAL by the defendant Sarah F. Walker from a judgment of the Supreme Court, entered in the office of the clerk of the county

of Kings on the 5th day of November, 1891, upon a verdict in favor of the plaintiff for $268, after a trial at the Kings County Circuit before the court and a jury; also from an order, entered in said clerk's office on the 30th day of October, 1891, denying a motion for a new trial; and also from an order, entered in said clerk's office on the 14th day of December, 1891, denying a motion to set aside the verdict on the ground of the misconduct of the jury.

*Charles M. Desmond*, for the appellant.

*Backus & Manne*, for the respondent.

DYKMAN, J.:

By her complaint in this action the plaintiff charges the defendant with the ownership of the house and premises designated as Nos. 13 and 15 Columbia street, in the city of Brooklyn, and alleges that she wrongfully and unlawfully constructed and maintained a dangerous opening in the highway in front of the property.

She then further states that on the 21st day of May, 1889, while walking upon the highway in front of such premises, without knowledge of the excavation, without want of care, she fell into it and sustained a severe injury to her foot.

The defendant, in her answer, admits her ownership of the property, and denies the other allegations in the complaint. Then, for a special defense, the answer "further alleges that the defendant, since the year 1878, has owned the premises mentioned in the complaint, and that at no time was there any dangerous hole, opening, pit or excavation maintained by her in front of said premises and along and upon the highway in front thereof, nor was there any arch in front thereof; but that, on the contrary, the only excavation in front of said premises during all of such time was an inclined depression wholly within the stoop line of said premises, gradually sloping downwards toward the cellar of said building; that such depression was on said premises when defendant acquired the same, and was and is an entrance for horses into the basement of said building, and prior to defendant's ownership of said premises was used, in connection with said premises, for the purpose of a stable for horses. That said depression was and is properly constructed and was lawfully maintained by defendant, and properly guarded

in all respects, and was in no sense dangerous or likely to cause damage or injury; and defendant alleges that this is the hole, opening, pit or excavation referred to by the plaintiff in her complaint. That all of the matters herein alleged existed on May 21, 1890; that at such last-mentioned date the said premises were in possession of a tenant of defendant."

Many years ago, and before 1860, the building upon the premises had been used as a livery stable, and a passage-way had been excavated in the sidewalk to lead to the basement by a gradual descent at an angle of about fifteen degrees. It was about four feet in depth at the floor of the basement and ascended so as to strike the sidewalk about at the stoop line, and left several feet between the point where it came to the surface and the curbstone. It was made and used to pass horses to and from the basement.

As the plaintiff was walking along the sidewalk in front of these premises with her two children, about ten and a half o'clock in the evening of the 21st day of May, 1889, she fell into that run-way and sprained her ankle, and this action is for the recovery of the damages she has sustained.

The run-way was in the sidewalk when the defendant became the owner of the premises, and she has leased them to a tenant and allowed the excavation to remain the same down to the time of the accident.

The cause was tried at the circuit before a jury, and the plaintiff obtained a verdict for the sum of $268. From the judgment entered upon that verdict, and from the order denying a motion for a new trial on the minutes, the defendant has appealed to this court. The defendant did not allege in her answer, nor prove during the trial, permission from the municipal government to construct the opening on the sidewalk, and although such authority might be inferred from long acquiescence in its continuance without objection from the city, yet the duty of safe covering and protection devolved upon some one, and if that obligation remained unperformed the opening continued to be a wrong and a nuisance. (*Jennings* v. *Van Schaick*, 108 N. Y., 532.)

It becomes necessary now to inquire and determine whether the defendant is responsible for the continuation of the wrong. The plaintiff was lawfully upon the sidewalk when she received her

injuries, and her right to use the same was co-extensive with the boundary of the street. She could walk by faith in reliance upon the performance of the duty which the law imposed upon the municipal authorities and the property owners to maintain the streets and sidewalks free from pit-falls and other nuisances. In all other respects the verdict of the jury exonerates her from the imputation of negligence contributive to the injury.

As we have seen already, the defendant had leased the premises to a tenant with the depression in the sidewalk, the same as when it was originally constructed, without any guard or protection. It remained the same down to the time of the accident, and the natural inference is that the property was rented for use in that condition.

It becomes necessary now to inquire and determine whether the defendant is responsible for the continuation of the wrong. According to the cardinal rule relating to the subject, any act of an individual in a public highway or street which detracts from the safety of travelers is a nuisance, and whoever makes or continues the same is responsible for all injuries resulting from the unsafety of the way caused thereby. (*Dygert* v. *Schenck*, 23 Wend., 446 ; *Congreve* v. *Smith*, 18 N. Y., 80.)

In point of principle, the maintenance of a nuisance is a wrong equal to its creation ; and it has long been settled that if the owner creates a nuisance upon his premises and then demises them while it yet exists, and is in the receipt of rent therefrom at the time of an accident ; he is responsible for the resulting damage.

There is no reason why that principle should not extend to this case. The pit was in the sidewalk when the defendant became the owner of the property, and it imperiled the safety of travelers. It was, therefore, a nuisance, and the premises were affected with it when they were rented by the defendant. It was her duty then to abolish the same, but instead of doing so she leased the property in the same dangerous condition. That act amounted to maintenance of the nuisance. Her failure to abate the same was non-feasance, and non-feasance was equivalent to misfeasance. Continuance was equal to creation, and inaction was continuance.

Her demise of the premises, with the opening uncovered, to be used by the tenant in the same condition, constituted a perpetuation of the wrong from which she derived a pecuniary benefit.

The case of *Walsh* v. *Mead* (8 Hun, 387), was an action for damages for injuries caused by the sliding of a quantity of snow from the roof of a house owned by the defendant, but in the actual occupation of a tenant at the time of the accident.

The action was prosecuted upon the theory that the roof of the building had not been properly constructed or guarded by the owner, and for that reason the snow was precipitated to the street and upon the plaintiff. That fact was found in accordance with the contention of the plaintiff. At the General Term of the Supreme Court, where the case went upon an appeal of the defendant, it was held that a roof so constructed in a large city is a nuisance because it imperils the safety of persons passing below in the lawful use of the streets. Also "that the landlord or owner will remain liable after a lease, and exclusive possession under it taken by a tenant of premises affected by a nuisance at the time of the demise, for an injury occasioned by it to a third person, and upon general principles he ought not to be exonerated from that liability, even though the tenant's negligence combines with the same wrong in producing such result. The erection and maintenance of a nuisance is a wrong, and by leasing the building affected by it to another person the owner continues it and stipulates for the enjoyment of a profit from it, that has always been held to be sufficient to render him accountable to innocent third persons for the consequences of injuries received by them from it."

It was also said in that case, as it may be said in this, that "no agency of the tenant intervened to produce the result," but it befell, in both cases, by reason of the improper structure which endangered the safety of travelers in the public street.

The doctrine enunciated in the case of *Swords* v. *Edgar* (59 N. Y., 28) is in favor of the plaintiff here. In that case the defendants were the owners of the one-half of a pier in the city of New York, which, at the time of the accident, was in the possession of their tenants, but it was in a defective condition at the time of the demise, and the owners were held responsible for injury to one lawfully upon the dock which resulted from its unsafety.

The decisions in the following cases are also in favor of the plaintiff, and of the conclusion we have reached: *Clancy* v. *Byrne* (56 N. Y., 129); *Congreve* v. *Morgan* (4 Duer, 439; 5 id., 495);

*Clifford* v. *Dam* (81 N. Y., 52); *Davenport* v. *Ruckman* (37 id., 568); *Irvine* v. *Wood* (51 id., 224); *Anderson* v. *Dickie* (26 How., 105).

This is not like the case of *Woram* v. *Noble* (41 Hun, 400); there the defendant became the owner of the premises in September, 1883, subject to a lease expiring May 1, 1884, and the tenant was in possession when the plaintiff was injured at the coal-hole in April, 1884. The coal-hole was in the sidewalk when the defendant became the owner, and he had no knowledge of its defective condition previous to the accident. It was there said, in the opinion respecting the nuisance, that the defendant "had no agency in its creation; was without knowledge of its existence; derived no benefit from its continuance, and was destitute of authority for its abatement."

The case is also easily distinguishable from the cases of *Wolf* v. *Kilpatrick* (101 N.Y., 146), and *Conhocton Stone Road* v. *Buffalo, etc., Railroad Company* (51 id., 582).

After a careful examination of the case, both upon principle and authority, we reach a conclusion adverse to the appellant; and the judgment and order denying the motion for a new trial should be affirmed, with costs.

There is also an appeal from an order denying a motion to set aside the verdict for misconduct of the jury, based upon the following facts :

At the close of the first day of the trial the jury was directed to visit the premises in the following language :

"The COURT — I think I will send the jury down and let them look at it. Gentlemen, I will send you down there to look at it, and make up your minds among yourselves what the condition of that path or run-way was in 1889, when this accident took place. I will not allow the counsel to say a word to you while you are there, but I will send an officer with you. You just go there and satisfy yourselves whether that hole has been filled up or not. I think if you examine it you can tell exactly what the condition of that run-way was in 1889.

At the opening of the court the next morning the following record was made :

"Mr. BACKUS (counsel for the plaintiff) — Does it appear upon the record that the jury at this stage yesterday afternoon visited the

scene of the accident with the consent of both parties. I would like it to appear upon the record that the jury visited the scene of the accident in the custody of an officer.

"Mr. DEMOND (counsel for the defendant) — No; let the record read that by·order of the court the jury visited the premises in question, without objection from either party.

"The COURT — I do not think it very material. The court has a right to order it."

The jury did visit the premises, and the moving affidavits tend to establish abuses, while the answering affidavits tend to disprove all such allegations.

We cannot convict the jury of misconduct upon the affidavits read on the motion. Without doubt there were remarks improperly addressed to some jurors, or made within their hearing, but we cannot say they influenced their minds. Such abuse was inevitable and was almost certain to follow the visitation of a body of men in a populous city to any particular locality, and the first mistake was made when the visit was directed. But neither of the counsel made any objection to such direction, and their silence amounted to consent.

It was easily to be foreseen that improprieties, even beyond detection, might creep in and that the jurors would imbibe some impression from the evidence they took in through their eyes, if not through their ears; and all that was waived by failure to object.

As no misconduct is fastened upon the jury, we cannot interfere, and the order should be affirmed, with ten dollars costs and disbursements.

BARNARD, P. J., concurred; PRATT, J., not sitting.

Judgment and order denying new trial affirmed.